STEVEN G. KALAR
Federal Public Defender
Northern District of California
JOHN PAUL REICHMUTH
Assistant Federal Public Defender
13th Floor Federal Building - Suite 1350N
1301 Clay Street
Oakland, CA 94612
Telephone:    (510) 637-3500
Facsimile:    (510) 637-3507
Email:        John_Reichmuth@fd.org


Counsel for Defendant Jefferson


IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | **Case No.:** CR 20–073 JST |
| Plaintiff, | **KHIRY JEFFERSON'S SENTENCING MEMORANDUM** |
| v. | |
| KHIRY JEFFERSON, | **Court:**　　　　Courtroom 6, 2d  Floor |
| Defendant. | **Hearing Date:**　November 6, 2020<br>**Hearing Time:**　1:00 p.m. |

## I.     INTRODUCTION

Mr. Jefferson comes before the Court for sentencing having entered a plea of guilty to being a felon in possession of ammunition in violation of 18 U.S.C. § 922(g)(1).  The parties agree that the Total Offense Level is 19 and the Criminal History Category is IV, for a range of 46-57 months prison.  The parties jointly recommend a sentence of 46 months imprisonment.  The PSR recommends 70 months prison based on a disagreement with the Plea Agreement, entered under Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure.  The defense disputes the application of the 4-level adjustment for possession of the ammunition in connection with another felony offense, under

U.S.S.G. § 2K1.1(b)(6)(B), and the government will not put on evidence to support that adjustment. It should not be imposed.  Mr. Jefferson has a severe seizure disorder, which, when combined with the difficult incarceration conditions occasioned by the Pandemic, will make a 46-month prison sentence very difficult.  No greater sentence is necessary under § 3553(a).

## II.    FACTS

### A.  Mr. Jefferson's history and characteristics.

Mr. Jefferson did not have a good childhood.  It was characterized by neglect.  He used marijuana from the age of 10 and ecstasy from the age of 13.  PSR ¶¶ 58-59.  Childhood drug use should rarely be blamed on the child, particularly when it involves a child of the age of 10.  It is a sign of parental neglect and can have devastating lifelong consequences on the wellbeing of the child. Mr. Jefferson describes a serious absence of attachment and supervision from his parents:

> He advised his mother was not a caring parent and did not physically or emotionally provide for him. He advised she was always working and did not seem to care about what he was doing or where he was going. As such, Mr. Jefferson stated he was always on the streets, hanging out with friends, and smoking marijuana. Mr. Jefferson advised his parents would hit him when he did something wrong, though he was never seriously injured. Mr. Jefferson believes his mother and stepfather are alcoholics as they frequently consume large amounts of beer.

PSR ¶ 51.

Scientists increasingly observe connections between childhood neglect like Mr. Jefferson's and neurological deficits.  There is a growing body of peer-reviewed studies linking Adverse Childhood Experiences (ACEs) with long-term changes in the brain.  Anda, Felitti, et al., *The enduring effects of abuse and related adverse experiences in childhood: A convergence of evidence from neurobiology and epidemiology*, Eur. Arch. Psychiatry Clin. Neurosci. 2006 April ; 256(3): 174–186,[1] (concluding that "The graded relationship of the ACE score to 18 different outcomes[2] in multiple domains

---

[1] Available at https://www.ncbi.nlm.nih.gov/pmc/articles/PMC3232061/
[2] These 18 areas were subcategories of the following:  Mental Disturbances; Somatic Disturbances; Substance Abuse; Impaired Memory of Childhood; Sexuality; and Perceived Stress, anger control, and risk of intimate partner violence.

1  theoretically parallels the cumulative exposure of the developing brain to the stress response with

2  resulting impairment in multiple brain structures and functions.").  A recent article in *The Atlantic*

3  discussed this research, noting the pioneering work of physicians Anda and Felitti, cited above:

> Unpredictable childhood trauma has long-lasting effects on the brain.
> Studies have shown that people with adverse childhood experiences are
> more likely to suffer from mental- and physical-health disorders, leading
> people to experience a chronic state of high stress reactivity.  One study
> found that children exposed to ongoing stress released a hormone that
> actually shrank the size of their hippocampus, an area of the brain that
> processes memory, emotion, and stress management.  Individuals who
> have experienced emotional or physical neglect by a parent are also at a
> greater risk of suffering from chronic illness as adults.

9  Cindy Lamonthe, *When Kids Have to Act Like Parents, it Affects Them for Life*, The Atlantic,

10  October 26, 2017.[3]  Mr. Jefferson has clearly suffered from several ACE's, some brief, some

11  enduring, chiefly the personally experienced violence, neglect, and addiction that characterized his

12  childhood.

13  Juvenile marijuana use is also probably detrimental to mental health.  Though research has

14  revealed mixed findings, there is evidence that marijuana use by people under the age of 16 can have

15  noticeable structural and cognitive effects, including those relating to psychotic disorders, IQ, and

16  impulsivity. *See* Kirsten Weir, *Marijuana and the Developing Brain*, Monitor on Psychology

17  (magazine of the American Psychological Association), November 2015, Vol 46, No. 10, page 48

18  (discussing numerous studies about the effects of marijuana on the developing brain)

19  (http://www.apa.org/monitor /2015/11/marijuana-brain.aspx). Like the major issue of parental

20  abandonment in this case, the chronic use of marijuana is a central mental health issue, as well.

21  Mr. Jefferson has also lost several associates to homicide and been shot himself.  In the latter

22  incident, a man walked up to him and shot him, seriously injuring him; the assailant was arrested and

23  convicted of attempted homicide.   https://www.marinij.com/2014/02/05/marin-jury-convicts-man-of-

24  attempted-murder-in-san-rafael-bus-stop-shooting/.

25  Finally, since 2016, Mr. Jefferson has had a major seizure disorder, rendering him completely

26  disabled and dependent on anti-convulsive medication.  PSR¶ 56.

27  

28  [3] Available at https://www.theatlantic.com/family/archive/2017/10/when-kids-have-to-parent-their-
siblings-it-affects-them-for-life/543975/

With these challenges, Mr. Jefferson has a lot of work to do.  But he also has some insight and a conscience.  An old friend of his, Vincent Chew, has written the court.  He observes:

> Khiry had a sincere understanding that his actions were immoral and wrong. In our many conversations about his troubles, he has never once tried to defend, minimize, or explain away his activities. Nor did he ever try to shift moral blame on others. He was very reflective of his actions. Khiry is ashamed that he had fallen so far below his own standards for himself.

Letter of Vincent Chew to the Court, attached as Ex. A.  Mr. Jefferson also has a home to go to when he releases.  After a significant federal sentence, Mr. Jefferson will be supervised intensively, and given some assistance related to cognitive issues and his Epilepsy.

### III.    ARGUMENT

#### A.  The Guidelines Calculations

#### 1.   The Adjustment under 2K2.1(b)(6)(B) does not apply.

The Guidelines allow for a four-level enhancement "[i]f the defendant . . . used or possessed any firearm in connection with another felony offense . . . ."  U.S.S.G. § 2K2.1(b)(6)(B).  "'Another felony offense', for purposes of subsection (b)(6)(B), means any federal state, or local offense, other than the . . . firearms possession . . . offense, punishable by imprisonment for a term exceeding one year, regardless of whether a criminal charge was brought, or a conviction obtained."  U.S.S.G. § 2K2.1, comment. note 14(C).  "The government bears the burden of producing sufficient evidence that the defendant intended to use or possessed the firearm in connection with a specifically contemplated felony."  *United States v. Noster*, 590 F.3d 624, 635 (9th Cir. 2009).

Both parties have objected to this adjustment.  PSR, Addendum, 1.  Here, following defense objection, the government will not produce evidence that the firearm was connected to another felony offense.  The adjustment will therefore remain unproven.  *U.S. v. Pitts*, 338 Fed.Appx. 676 (9th Cir. 2009) (unpublished) (where PSR noted that firearm had been reported stolen and defense objected, enhancement was unproven without further evidence tendered by government at sentencing hearing).

The defense objection to this adjustment, and invocation of the government's burden, is reasonable.  Marijuana is lawfully sold and used in this state.  Frequently, in this district, individuals possess marijuana concurrently with a firearm without receiving this adjustment, particularly where

they are not out in public carrying both the weapon and indicia of dealing. Besides proximity, there is no evidence that the weapon was used to facilitate or embolden any shipping or sale of marijuana. Mr. Jefferson has previously been the victim of a near-fatal shooting, in which drugs were not involved. In that light, his possession of a firearm is more consistent with his own fear of harm, than with the presence of quasi-legal marijuana, which is sold and stored in much greater quantities throughout the county.

## B. The Sentencing Factors under 18 U.S.C. § 3553(a).

Under federal law, *every day of incarceration must be necessary*. The court is familiar with the directives of *United States v. Booker*, 543 U.S. 220 (2005) and 18 U.S.C. § 3553(a). The Sentencing Guidelines range is not mandatory and the Court has a duty to exercise judgment and discretion in arriving at a sentencing determination. The Court must consider the Guidelines range, the nature and circumstances of the offense, the history and characteristics of the defendant, and the need to avoid unwarranted sentence disparities among similarly situated defendants. 18 U.S.C. § 3553(a)(1), (a)(4) and (a)(6). In crafting a sentence that is "sufficient, but not greater than necessary," to comply with the purposes set forth in 18 U.S.C. § 3553(a), the Court must also consider the need for the sentence imposed: (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; and (C) to protect the public from further crimes of the defendant. 18 U.S.C. § 3553(a)(2).

### 1. The pandemic calls for a sentence of 46 months.

While Mr. Jefferson is incarcerated, his odds of contracting COVID-19 will remain elevated significantly. The COVID-19 infection rate within prison generally, and BOP facilities specifically, far outpaces the infection rate in the United States. A recent research letter in the Journal of the American Medical Association ("JAMA") found the COVID-19 case rate for prisoners of 3,251 per 100,000 prisoners was 5.5 times higher than the U.S. population case rate of 587 per 100,000. Similarly, the adjusted death rate from COVID-19 for inmates was three times higher than would be expected if age and sex distributions of the U.S. and prison population were equal. Saloner, et al.,

1   "COVID-19 Cases and Deaths in Federal and State Prisons," JAMA, Jul. 8, 2020,

2   https://jamanetwork.com/journals/jama/fullarticle/2768249.

3        Even in BOP facilities that have weathered a significant outbreak, a high risk remains.  In the

4   civil case *Wilson v. Ponce*, CV 20-4451-MWF-PVC (C.D.Cal. 2020), Hon. Michael W. Fitzgerald,

5   United States District Judge, appointed a neutral expert to assess conditions at Terminal Island

6   following a large COVID-19 outbreak there.  The report, filed in the action by the United States

7   Attorney, was authored by former San Quentin Chief Surgeon and Physician Michael Rowe, M.D.

8   *Report on Current Management and Future Risks Associated with Covid-19 Infection at FCI*

9   *Terminal Island*, filed August 24, 2020 (Docket no. 74, available at

10  https://ecf.cacd.uscourts.gov/doc1/031133751337).  Of great relevance to the instant memorandum,

11  the report finds:

12
13  - "The prison remains and will remain constantly teetering on the brink of a recurrent outbreak, as with so many communities and institutions." *Id.* at 5.

14       Even at a facility that has learned its lesson, Mr. Jefferson will very likely be exposed while

15  incarcerated.  Minimizing that exposure justifies the requested sentence.

16       It is also possible that Mr. Jefferson's neurological illness may expose him to heightened risks

17  of contracting COVID-19 or a more severe form of it.  As courts have recognized, "a defendant's

18  mental health needs may also be the basis for granting compassionate release." See, e.g., *Doe v. Barr*,

19  2020 WL 1820667, at *4 (N.D. Cal. Apr. 12, 2020)("[g]rowing evidence demonstrates that . . .

20  anxiety/stress, and depression can lead to decreased immune response and increased risk of

21  infections").

22       Even without illness, the sentence requested by Probation would be very severe, given the lack

23  of movement, visiting, exercise, or programming caused by the pandemic.  This is especially difficult

24  for someone who already has health issues.  Other district courts have recently cited the harsh prison

25  conditions and lack of programming opportunities due to the coronavirus as reasons to vary

26  downward in imposing sentence.  As one court noted:

27
28          [T]he Court is aware that defendants committing similar offenses now, in the time of COVID-19, are receiving vastly lower sentencing recommendations, because their time in custody is harsher. Those with

pre-existing conditions, like diabetes, are receiving particularly favorable recommendations. Many are receiving sentences around 24 months—the amount of time Mr. Armstrong has already served in custody. Therefore, the Court finds reducing Mr. Armstrong's sentence would also avoid unwarranted disparities between similarly situated defendants.

*United States v. Armstrong*, No. 18-CR-5108-BAS-1, 2020 WL 4366015, at *4 (S.D. Cal. July 30, 2020) (granting compassionate release after 21 months on 46-month sentence for smuggling 35 kilograms of methamphetamine into United States). *See also United States v. William White*, 19-cr-325-RC (D.D.C. Aug. 5, 2020) (referring to more punitive and less rehabilitative conditions at the jail due to COVID-19); *United States v. Antonio Cox*, 19-cr-235-JDB (D.D.C. July 29, 2020) (acknowledging lack of programming due to COVID-19). The pandemic justifies a 46-month sentence in this case.

## 2. Mr. Jefferson's Adverse Childhood Experiences call for a 46-month sentence.

The Ninth Circuit has repeatedly recognized that sentencing courts should take into account difficulties defendants faced during youth. This was true even before *Booker* made the guidelines advisory. *See, e.g., United States v. Floyd*, 945 F.2d 1096, 1099 (9th Cir. 1991) (upholding a district court's downward departure from the sentencing guidelines on the basis of "youthful lack of guidance"). Mr. Jefferson's deprivation provides grounds for mitigation under § 3553(a) because it explains and reduces his culpability for most of his criminal behavior. Mr. Jefferson has clearly suffered from several ACE's. He survived significant child neglect. He needs a good cognitive program to help him deal with these problems. He has had a difficult life, but he is capable of being a decent person.

The sentencing factors favor a 46-month prison sentence in this case. Given the grave risks of incarceration, respect for the law will not be furthered by a lengthier sentence. If he were to suffer from severe health problems in prison, the opposite effect would be engendered. Nor would parity be advanced by denying the request of the parties when many defendants are receiving leniency. *See United States v. Anderson*, No. 18-CR-5108-BAS-1, 2020 WL 4366015, at *4 (S.D. Cal. July 30, 2020) (leniency during COVID-19 pandemic effectuates parity).

Finally, deterrence of the public is not compromised by the request in this case:  Mr. Jefferson's case is very unique and the requested sentence is close to four years.  He settled this case at the height of the pandemic, and he suffers from severe epilepsy.  The sentencing factors clearly militate for the requested sentence

**IV.      CONCLUSION**

Based on the foregoing, the defense respectfully requests that Mr. Jefferson be sentenced to 46 months of imprisonment, followed by three years of supervised release.

Dated:      October 30, 2020                              Respectfully submitted,


STEVEN G. KALAR
Federal Public Defender
Northern District of California

/S
JOHN PAUL REICHMUTH
Assistant Federal Public Defender